IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FINTECH INNOVATION ASSOCIATES LLC, | ) ) ) | Civil Action No. 2:22-cv-00934 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **Hon. Marilyn J. Horan** |
| PNC BANK, N.A., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT PNC BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant PNC Bank, N.A. ("PNC") respectfully moves to dismiss Fintech Innovation

Associates LLC's ("FIA") complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6).

**I.    Introduction**

This is the second design patent infringement suit that William Grecia, FIA's principal

officer, has brought against PNC within nine months.  In both suits, one of Mr. Grecia's IP

holding entities ("Wepay Global Payments LLC" in the first; "Fintech Innovations Associates

LLC" presently) accuses a portion of PNC's Mobile Banking application that interfaces with the

Zelle® digital payments network of infringement.  *See Wepay Global Payments LLC v. PNC

Bank, N.A.*, No. 2:22-cv-00592-MJH, 2022 WL 1782504, at *1 (W.D. Pa. June 1, 2022) ("*Wepay

Global Payments*").  The court in *Wepay Global Payments* dismissed the complaint against PNC

with prejudice because "a side-by-side comparison of WPG's Asserted Design and PNC's

Accused Design demonstrates that they are 'sufficiently distinct' and 'plainly dissimilar' such

that no reasonable factfinder could find infringement."  *Id.* at *3.  The reasoning in *Wepay

*Global Payments* applies equally here.  Dismissal is warranted because Mr. Grecia has failed to allege a plausible claim of design patent infringement.

Unlike a utility patent, a design patent only protects the specific ornamental features claimed (i.e., shown) in the patent's figures.  Asserted U.S. Design Patent No. D945,453 ("the '453 patent") claims a single, specific ornamental design consisting of a "transitional image sequen[ce]" that "transitions between" the disclosed images on a screen.  Dkt. 1, Complaint, Ex. A ("'453 patent"), at Cover.  FIA's assertion of the '453 patent against portions of PNC's Mobile Banking application ("PNC Design") is not plausible because the PNC Design looks so different from the '453 patent's figures ("FIA Claimed Design") that no ordinary observer could possibly confuse the two.



| FIGURE 2 | | |
| --- | --- | --- |
| **Asserted '453 Patent Design (Fig. 2)** | **Accused PNC Mobile Banking Application (Compl., Ex. B.1 at 3; image obtained from electronic versions of Exhibit B)** | **Accused PNC Mobile Banking Application (Compl., Ex. B.1 at 3)** |

As shown above, there is virtually no similarity between the '453 patent and the PNC Design. The FIA Claimed Design contains segments having spatial relationships and relative proportions that are starkly and unmistakably different than what is accused in the PNC Design. These are precisely the same kinds of differences that justified dismissal in *Wepay Global Payments*. *See Wepay Global Payments*, 2022 WL 1782504 at *3. Even when all allegations are taken as true, FIA's infringement claim is implausible. Thus, FIA's complaint should be dismissed for failure to state a claim of design patent infringement.

## II.     Background

### A.      William Grecia's History of Meritless Assertions

William Grecia is the named inventor of the '453 patent and the principal of Fintech Innovation Associates LLC. He is also a serial filer of meritless cases. Over the last 10 years, Mr. Grecia, either in his personal capacity or on behalf of organizations, has filed at least 95 intellectual property infringement actions. *See* Exhibit A (Chart of Mr. Grecia's Patent Suits). Of those cases, only eleven have reached a final disposition. *See id.* at lines 37, 54, 57, 60, 66, 67, 68, 69, 70, 78, 95. Nine of those eleven cases were dismissed at the pleadings stage.[1]  *See id.* at lines 37, 57, 66, 67, 68, 69, 70, 78, 95; *see also Grecia Estate Holdings LLC v. Facebook, Inc.*, 6-21-cv-00677 (W.D. Tex. Jun. 6, 2022) (dismissing Mr. Grecia's allegation that Facebook infringes a utility patent because Mr. Grecia did not provide "sufficient evidence to show that infringement is a reasonable inference to draw"). Of the decisions that Mr. Grecia appealed, all were affirmed by the Federal Circuit. *See id.* at lines 38, 55, 58, 71. Recently, this Court dismissed Mr. Grecia's allegation that PNC infringes a different design patent because "no

---

[1] Regarding the remaining two cases, in one case, some of the claims were found to be indefinite at claim construction, leading to a stipulated final judgment of invalidity that was affirmed on appeal. *Id.* at line 54. In the other, the case was dismissed sua sponte by the court after the defendant declared bankruptcy. *Id.* at line 60.

reasonable factfinder could find infringement." *Wepay Global Payments*, 2022 WL 1782504 at

*3.  As demonstrated above, none of Grecia's prior cases involved an assertion that has proven

meritorious.

      **B.**        **The '453 Design Patent and the Accused PNC Design**

The '453 patent is titled "Display Screen Portion With Animated Graphical User

Interface" and purports to claim "[t]he ornamental design for a display screen portion with

animated graphical user interface, as shown and described."  '453 patent, at Cover.  The '453

patent includes a single embodiment[2] claiming a four-screen "transitional image"[3] sequence of

the "animated graphical user interface" depicted in Figures 1 through 4 of the '453 patent.  '453

patent, at Cover.  The broken lines represent unclaimed elements—meaning they do not form a

part of the claimed design.  *Id*.  Figures 1-3 of the '453 patent each claim corner and line

segments from various rectangles in particular spatial arrangements, and Figure 4 claims the text

"Amount" in a standard font.

Similar to the allegations in *Wepay Global Payments*, FIA alleges that portions of PNC's

Mobile Banking application, particularly the portion of the application that interfaces with the

Zelle digital payments network (the "PNC Design"), infringes the FIA Claimed Design.  *See*

Compl., Ex. B at 2-10; *Wepay Global Payments*, 2022 WL 1782504 at *1.  The FIA complaint

---

[2] Although the complaint also refers to a "second embodiment," *see* Compl. ¶¶ 12-14, FIA concedes that statement is in error because the '453 patent has no second embodiment. *Bank of America, N.A.*, No. 1:22-cv-01215, ECF No. 11 (Opposition to Motion to Dismiss), at 5.
[3] Neither the complaint nor the claim charts in Exhibit B make any mention of a transition between images in the PNC Design, and purported video submissions in links to a Dropbox folder (*see* Compl., Ex. B at 2-10) are outside the four corners of the complaint.  *See* LCvR 5.1(L) ("[A] hyperlink reference is extraneous to any filed document and does not make the hyperlinked document part of the court's record. … Electronically filed documents may not contain in text or footnotes: … (c) Hyperlinks to audio or video files."); *see also Nabors v. Lewis*, No. CV 6:17-2887-DCC-KFM, 2018 WL 7118008, at *3 (D.S.C. Feb. 16, 2018) (describing hyperlinks as "inappropriate in a pleading" because they "are subject to editing or deletion by outside sources").

sets forth two counts of infringement.  In count one, the PNC Design results from a user

progressing through payment screens (Screen A and Screen B), selecting to make payment via a

QR Code (Screen C.1) and ultimately receiving confirmation (Screen D).  Count two is nearly

identical to count one, except that the user selects to make payment via an email address or

phone number (Screen C.2).  *See* Compl., Ex. B at 2-10.  FIA does not allege anywhere in the

complaint or in Exhibit B that an ordinary observer would mistake the PNC Design for the FIA

Claimed Design.  Instead, FIA superimposes red lines drawn over allegedly infringing portions

of PNC's Mobile Banking application to try to create the impression of a similarity where none

exists.  As shown below, however, PNC's actual Mobile Banking application (undoctored, i.e.,

without superimposed red lines) looks nothing like Figures 1-4 of the '453 patent:



| FIGURE 1 | FIGURE 2 | FIGURE 3 | FIGURE 4 |

**'453 Patent at Figs. 1-4**



Screen A          Screen B          Screen C.1          Screen D

**Compl., Ex. B.1 at 2-5 (images obtained from electronic versions of Exhibit B)**



**Compl., Ex. B.1 at 2-5**



Screen A          Screen B          Screen C.2          Screen D

**Compl., Ex. B.2 at 7-10 (images obtained from electronic versions of Exhibit B)**



**Compl., Ex. B.2 at 7-10**

## III.   WePay's Complaint Fails to State a Plausible Claim for Infringement of the '453 Patent.

### A.   Legal Standard

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure

12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Wepay Global Payments*, 2022 WL 1782504, at *3 (quoting *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931, 934 (Fed. Cir. 2014) (affirming dismissal of complaint when "a side-by-side comparison of the drawings of the [asserted design] to the accused products suffices to demonstrate that there is no infringement"). "Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments." *Wepay Global Payments*, 2022 WL 1782504, at *3.

"A design patent is directed to the appearance of an article of manufacture." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). A design patent claim "limits protection to the ornamental design" of the specified article as it is shown in the patent. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); *see Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). To determine whether an accused product infringes the claimed design of a design patent, courts employ the "ordinary observer" test to determine whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Wepay Global Payments*, 2022 WL 1782504, at *3 (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (en banc). "***In some instances***, the claimed design and the accused design will be sufficiently distinct that ***it will be clear without more that the patentee has not met its burden*** of proving the two designs

would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678 (emphasis added).

Courts dismiss design patent infringement actions where it is clear, based on the allegations of the complaint and "a side-by-side comparison of [the accused] and [claimed design]," that the two "are 'sufficiently distinct' and 'plainly dissimilar' such that no reasonable factfinder could find infringement." *See Wepay Global Payments*, 2022 WL 1782504, at *3; *see also Curver Luxembourg, SARL v. Home Expressions Inc.*, No. 2:17-cv-4079-KM-JBC, 2018 WL 340036, at *4 (D.N.J. Jan. 8, 2018), *aff'd*, 938 F.3d 1334 (Fed. Cir. 2019); *Competitive Edge, Inc. v. Staples, Inc*, 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010); *Performance Designed Prods. LLC v. Mad Catz, Inc.*, No. 16-cv-00629, 2016 WL 3552063, at *4 (S.D. Cal. June 29, 2016); *Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795, 802 (S.D.N.Y. 2018); *Simpson Strong-Tie Co., Inc.*, 411 F. Supp. 3d at 987.  Where a "side-by-side comparison leaves no doubt that [a patent owner] cannot meet its burden, no claim construction, discovery, or amended complaint is appropriate." *Wepay Global Payments*, 2022 WL 1782504, at *3.

## B.    The Accused Portions of the PNC Mobile Banking Application Are Drastically and Unmistakably Different in Appearance than the FIA Claimed Design

Like in *Wepay Global Payments*, a side-by-side comparison of the PNC Design with the FIA Claimed Design underscores that no reasonable jury could plausibly find infringement. *Wepay Global Payments*, 2022 WL 1782504, at *3; *see also Performance Designed Prod*, 2016 WL 3552063, at *4 (granting dismissal after side-by-side comparison because "the two designs are not 'substantially the same' and an ordinary observer would not be deceived into believing that the accused product is the same as the patented design" (quoting *Egyptian Goddess*, 543 F.3d at 678)); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010) ("The proper comparison requires a side-by-side view of the drawings of the [asserted] patent design

and the accused products.").  While design patent infringement analysis considers the claimed

"design as a whole," *id.*, here, the prominent differences in the comparisons of the claimed

portion of Figure 2 with the accused symbol are representative and determinative.

As shown below, the line segments in the PNC Design are located in a different place on

the screen and are significantly smaller than the segments in Figure 2 of the FIA Claimed

Design.  Under such circumstances, no "ordinary observer, giving such attention as a purchaser

usually gives," could think that the "two designs are substantially the same."  *See Egyptian*

*Goddess*, 543 F.3d at 670.  In fact, FIA accuses the same icon of infringing Figure 2 of the '453

patent that this Court found did not infringe the claimed three squares in the patent at issue in

*Wepay Global Payments*:



FIGURE 2
**Asserted '453 Patent Design**
**(Fig. 2)**



**Compl., Ex. B.1 at 3 (image**
**obtained from electronic**
**versions of Exhibit B)**



**Compl., Ex. B.1 at 3**
**(excerpted)**




FIGURE 3






| **Asserted '702 Patent Design (Fig. 3) in *Wepay Global Payments*** | **Accused PNC Mobile Banking Application in *Wepay Global Payments*** | **Accused PNC Mobile Banking Application in *Wepay Global Payments* (excerpted)** |

Mr. Grecia does not (and cannot) purport to have invented displaying rectangles on a screen, just as the court in *Wepay Global Payments* noted that Mr. Grecia certainly did not invent the three squares contained in a QR code.  2022 WL 1782504, at *3.  And like in *Wepay Global Payments*, "*[a]ny similarity* between the [asserted and accused] designs *is limited to basic geometric shapes*, but with *notable differences in shape size and spacing* such that no ordinary observer would mistake the Accused Design with the Asserted Design or vice versa."  *Id.* (emphasis added).  Therefore, under the ordinary observer test, the PNC Design and the FIA Claimed Design are "sufficiently distinct" and "plainly dissimilar" such that no reasonable factfinder could find infringement.  *See id.*

The different proportions and relative sizes of the line segments claimed in the other figures of the '453 patent further emphasize the implausibility of FIA's allegations.  The relative sizes, proportions, and placement of the segments on the screen are critical to the FIA Claimed Design, given that these segments are the only claimed features of the design depicted in Figures 1-3.  Indeed, Figures 1-3 only differ from each other through these spatial and size differences.

For example, Figure 1 shows line segments making up a small square in the top right corner of the screen, Figure 2 shows line segments making up a larger square in the bottom center of the screen, and Figure 3 shows line segments of a large rectangle in the center of the screen. Therefore, the spatial relationship and relative size of the claimed segments are not a "minor" difference between the patented and accused designs. *See Competitive Edge*, 763 F. Supp. 2d at 1011 (holding that accused design did not infringe due to differences in "important aspects that dominate the overall visual appearance of the respective designs"); *see also Wine Enthusiast*, 317 F. Supp. 3d at 802 ("[W]hen considering the scope of the [Asserted] Patent, it is apparent that these design differences are not minor.  Indeed, together, these features constitute the entirety of the claimed design except for its color.").

The Federal Circuit's decision in *Anderson v. Kimberly-Clark Corp.* is instructive.  In *Anderson*, the design patent at issue was for disposable undergarments.  570 F. App'x at 928. The lower court dismissed the case for failure to state a plausible claim for relief, finding that "a side-by-side comparison of the drawings of the [asserted design] to the accused products suffices to demonstrate that there is no infringement."  *Id.* at 931.  The Federal Circuit affirmed, explaining that the district court properly identified the three "most striking" differences between the patented and accused designs, relating to the physical shape ("leg and waist openings"), style ("bloomers-style" vs. "briefs'-style") and materials used.  *Id.* at 933.  Those "plain differences" between the patented and accused designs justified dismissal.  *Id.* at 933-34.

The distinctions in the PNC Design are not limited to Figure 2.  As shown below, other "markedly apparent" differences, such as the relative sizes, proportions, and placement of the segments on the screen, distinguish the accused PNC Design from Figure 3 in both counts.  *See Anderson*, 570 F. App'x at 933.



FIGURE 3
**Asserted '453 Patent Design
(Fig. 3)**

**Compl., Ex. B.1 at 3 (image
obtained from electronic
versions of Exhibit B)**

**Compl., Ex. B.1 at 3**

FIGURE 3
**Asserted '453 Patent Design
(Fig. 3)**

**Compl., Ex. B.2 at 9 (image
obtained from electronic
versions of Exhibit B)**

**Compl., Ex. B.2 at 9**

For example, FIA purports to show that the line segments in Figure 3 are present in the

PNC Design by superimposing red lines over screen shots of the PNC Design.  But the red lines

that FIA superimposes *are not* the FIA Claimed Design—the red lines have different

thicknesses, sizes, and relative proportions than the claimed segments.  FIA stretches and distorts

the claimed line segments in an effort to show infringement where there is none.  Even putting

these distortions aside, the segments in Figure 3 create the impression of a taller rectangle than

the ones accused in the PNC design.

Considering these and other distinctions between the PNC Design and the FIA Claimed

Design as a whole and taking the allegations in the complaint as true, the FIA Claimed Design

requires specific spatial arrangements between the line segments of the rectangles that are

substantially dissimilar from the PNC Design.  In the context of design patents, which protect

only visual, aesthetic, and ornamental appearance, infringement cannot result from the mere fact

that the PNC Design uses rectangle-shaped divisions between elements on the screen, especially

where FIA did not invent such rectangles or line segments.  *See Reddy v. Lowe's Companies,*

*Inc.*, 60 F. Supp. 3d 249, 256 (D. Mass. 2014) (describing the "one specific [claim construction

rule] to design patents: that '[i]t is the drawings of the design patent that provide the description

of the invention.'") (quoting *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998)).  Instead,

design patent infringement hinges on "whether an ordinary observer, familiar with the prior art,

would be deceived into thinking that the accused design was the ***same*** as the patented design."

*Egyptian Goddess*, 543 F.3d at 672 (emphasis added).

Like in *Wepay Global Payments*, FIA has failed to plead facts that, if true, would

establish that an ordinary observer would be deceived.  In fact, FIA's complaint makes no factual

allegations as to why such designs would confuse an ordinary observer, and instead asserts the

legal conclusion that the PNC Design infringes, citing only to the appended claim charts.  *See*

Compl. ¶ 11 (incorporating Ex. B).  But no "ordinary observer, giving such attention as a

purchaser usually gives," could think that the "two designs are substantially the same."  *See*

*Egyptian Goddess*, 543 F.3d at 670.  A simple visual comparison reveals that the accused screens employ completely different and unmistakably distinct shapes, despite FIA's attempt to manipulate and reconfigure its design patent figures to make them seem more similar to the accused screens.

**IV.    Conclusion**

For the foregoing reasons, the Court should dismiss Plaintiff's complaint under Rule 12(b)(6).

June 27, 2022

Respectfully submitted,

/s/ *Gregory D. Vose*
Gregory D. Vose
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA, 15222
(412) 288-3131
gvose@reedsmith.com

James T. Hultquist (*pro hac vice* forthcoming)
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507
(312) 207-6494
jhultquist@reedsmith.com

Gregory Lantier (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
gregory.lantier@wilmerhale.com

Benjamin S. Fernandez (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth St.
Suite 2600
Denver, CO 80202
ben.fernandez@wilmerhale.com

Alexander J. Nemtzow (*pro hac vice* forthcoming)
Jeffrey M. Soller (*pro hac vice* forthcoming)
Hailey L. Cherepon (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
jeff.soller@wilmerhale.com
hailey.cherepon@wilmerhale.com

*Attorneys for Defendant PNC Bank, N.A.*